**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Whitney Mitchell, | Case No.: 2:21-cv-00020-JAD-EJY |
| Plaintiff | |
| v. | **Order Denying Motion to Set Aside Default and Granting Motion for Default Judgment** |
| Auto Mart, LLC, | |
| Defendant | [ECF Nos. 36, 44] |

Plaintiff Whitney Mitchell sues Auto Mart, LLC for breach of contract, breach of the implied covenant of good faith, conversion, negligence, deceptive trade practices, and violations of Nevada's Uniform Commercial Code (UCC) statutes after it repossessed her car before she defaulted on her financing agreement. Auto Mart failed to appear in this litigation for more than two years, and the clerk entered default against it. Now that Mitchell has moved for default judgment, attorneys' fees, and costs, Auto Mart finally makes an appearance, moves to set aside the default, and opposes Mitchell's motion for default judgment, arguing that it was never properly served and still maintains meritorious defenses to Mitchell's claims. I deny Auto Mart's motion because it was properly served in 2021 and has not shown good cause to set aside the default. And because Mitchell has satisfied the factors outlined in *Eitel v. McCool*,[1] I grant her motion for default judgment; award her actual damages, attorneys' fees, and costs; and close this case.

---

[1] *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986).

**Background**

Mitchell bought a used car from Auto Mart in November 2019.[2] Under the sales contract, her first payment was due on December 21, 2019, and default would occur if she was 30 days late on any payment or the prospect of payment was impaired.[3] In either event, Auto Mart could "at [its] option and without notice or demand (1) declare all unpaid sums immediately due and payable, (2) file suit against [Mitchell] for all unpaid sums, and (3) take immediate possession of the vehicle."[4] The contract also prohibited Mitchell from "permanently" taking the car out of Nevada without Auto Mart's written consent.[5]

Auto Mart discovered that Mitchell's car was in Florida, so in January 2020, it contacted repossession agency (and former defendant) Right-Now Recovery to begin the process of repossessing it.[6] Her car was repossessed on January 9, 2020.[7]

A year later, Mitchell filed suit against Auto Mart for breach of contract, breach of the implied covenant of good faith, conversion, negligence, deceptive trade practices, and violations of Nevada's UCC statutes.[8] She was originally unable to serve Auto Mart, so on May 25, 2021, Mitchell filed a motion to effectuate service by alternative means and her second motion to extend time of service.[9] On that very same day, however, Mitchell finally effectuated service on

---

[2] ECF No. 36-1.
[3] *Id.* at 2, 11.
[4] *Id.* at 26.
[5] *Id.*
[6] ECF No. 27-1.
[7] ECF No. 36-2.
[8] ECF No. 1.
[9] ECF No. 12; ECF No. 13.

2

Auto Mart,[10] and she filed proof of that service and a notice to withdraw her two prior motions.[11] Despite that notice, the magistrate judge entered an order granting Mitchell's motions for alternative service and to extend the time of service, detailing three ways Mitchell could effectuate proper service on Auto Mart.[12] Because Mitchell had already served Auto Mart, she ignored that order and did not serve Auto Mart again.

By September 2021, Auto Mart had yet to appear in this case, so the clerk entered default against it.[13] Mitchell continued on with the litigation against Right-Now Recovery, eventually receiving partial final judgment against it.[14] As 2023 approached, Auto Mart was still MIA.

Mitchell now moves this court for a default judgment against Auto Mart, arguing that the *Eitel* factors weigh in her favor and she should be awarded $14,715.47 in actual and statutory damages, $4,085.75 in attorney's fees and costs, and a declaratory ruling that she is not responsible for any deficiency balance to Auto Mart.[15] Auto Mart responds and moves to set aside the default—making its first appearance in this case—arguing that default judgment is improper because its registered agent was never properly served and it maintains meritorious defenses to Mitchell's claims.[16] Mitchell counters that she filed proof of service on Auto Mart back in May 2021, it maintains no feasible defenses to her claims, its culpable conduct led to the entry of default, and she would be prejudiced if the court were to set the default aside.[17]

---

[10] *See* ECF No. 14.
[11] *Id.*; ECF No. 15.
[12] ECF No. 16.
[13] ECF No. 21.
[14] ECF No. 29; ECF No. 35.
[15] ECF No. 36.
[16] ECF No. 38 at 2; ECF No. 44.
[17] ECF No. 48.

3

**Discussion**

**A.    Auto Mart has not shown that default should be set aside.**

Federal Rule of Civil Procedure 55(a) authorizes the clerk of court to enter the default of any defendant who has failed to plead or otherwise respond to claims brought against it. But "[t]he court may set aside an entry of default for good cause."[18] "Good cause" turns on three factors identified by the Ninth Circuit in *Falk v. Allen*: (1) whether the defaulting party engaged in culpable conduct that led to the default, (2) whether there is no meritorious defense, and (3) whether reopening the case would cause prejudice to the plaintiff.[19] This test is disjunctive, and proof of any one of these three factors allows a court to deny a motion to set aside default.[20] The defendant bears the burden to show that these factors weigh in favor of such relief,[21] and overarching all of them is the Ninth Circuit's stated policy favoring adjudication of disputes on their merits,[22] with all doubts resolved in favor of setting aside the default.[23]

   *1.    Auto Mart was properly served.*

Auto Mart argues that the court should exercise its discretion under FRCP 55(c) and set aside the default because (1) Mitchell never properly effectuated service and (2) good cause exists for this relief as Auto Mart may still raise meritorious defenses against her claims.[24]

---

[18] Fed. R. Civ. P. 55(c).

[19] *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984); *see also Franchise Holding II, LLC v. Huntington Rest. Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004) ("The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b).").

[20] *See Brandt v. Amer. Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1111 (9th Cir. 2011).

[21] *Franchise Holding II*, 375 F.3d at 926.

[22] *Eitel*, 782 F.2d at 1472.

[23] *Schwab v. Bullock's, Inc.*, 508 F.2d 353, 355 (9th Cir. 1974).

[24] ECF No. 44 at 2–3.

Mitchell responds that Auto Mart was properly served and its meritorious defenses are merely general allegations unsupported by evidence.[25] She also addresses the remaining two *Falk* factors, contending that Auto Mart engaged in culpable conduct because it knew about this case since January 2021 and was properly served in May 2021, yet it failed to appear until July 2023 in bad faith, and that she will be prejudiced if the default is set aside because she initiated this action more than three and a half years ago and Auto Mart has since closed its doors, making discovery difficult.[26]

As its first challenge to Mitchell's proper service of process, Auto Mart argues that its registered agent was never served.[27] FRCP 4(h) and (e) permit state laws to govern service of process in federal court. Under Nevada law, service of process on a Nevada corporation like Auto Mart is proper if the summons and complaint are delivered to the registered agent of the corporation or "a person of suitable age and discretion at the most recent street address of the registered agent."[28] Street address is defined as "the actual physical location in [Nevada] at which a registered agent is available for service of process."[29] So service on Auto Mart could thus be effectuated by delivering a copy of the summons and complaint to Auto Mart's registered agent Tina Chan, or another adult of suitable discretion, at Chan's address.

Mitchell filed proof of service indicating that on May 25, 2021, Chan was served with a copy of the summons and complaint "by leaving the copies with or in the presence of DAVID

---

[25] ECF No. 48 at 8–9.

[26] *Id*. at 5–6, 10.

[27] ECF No. 44 at 2.

[28] Nev. Rev. Stat. § 14.020(2).

[29] *Id*. at § 14.020(6)(b).

5

SAPPER, CO-RESIDENT."[30]  Auto Mart does not contest that Chan was available for service of process at this address.  So because Chan could receive service there and Sapper, an adult of suitable discretion and co-resident at the address, was given copies of the summons and complaint, he thus received service on behalf of Chan as the registered agent of Auto Mart.

But it's not whether service on Sapper would satisfy the law, rather whether Sapper was served at all that Auto Mart disputes.[31]  It cites to Sapper's declaration in which he denies ever receiving service at his home on May 26, 2021.[32]  Mitchell agrees with Auto Mart, explaining that the proof of service indicates that Sapper was served on May 25.[33]  Proof of service is prima facie evidence of valid service,[34] and Mitchell's proof indicates that a copy of the summons and complaint was left with Sapper on May 25, effectuating service on Chan as the registered agent under Nevada law on that day.[35]  Auto Mart has not presented a sufficient argument or provided any evidence to show that the proof of service was defective or that the service itself was insufficient under state or federal law.  Because the proof of service indicates that Chan was properly served, I find that service was effectuated on Auto Mart.

Auto Mart alternatively contends that, even if Chan was properly served, that service violated the magistrate judge's prior order directing alternative service.[36]  Some confusion has

---

[30] ECF No. 14 (proof of service).

[31] ECF No. 44 at 2 ("Proof of Service was not effectuated on [the] Resident [sic] Agent.").

[32] *Id*. at 18.

[33] ECF No. 48 at 7.

[34] *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007) ("[A] signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence.").

[35] ECF No. 14 (proof of service).

[36] ECF No. 44 at 2.

arisen due to Mitchell's belt-and-suspenders service approach. With the deadline for service nearing, she filed on May 25, 2021, a second motion to extend time to serve Auto Mart, along with her first motion to effectuate service by alternative means.[37] But service was effectuated on Chan for Auto Mart that same day, mooting the need for the extension and alternate means of service. Mitchell filed proof of that service two days later and included a notice to withdraw those two motions.[38] The magistrate judge granted Mitchell's motions, appearing to have missed her notice, and ordered her to serve the Nevada Secretary of State, electronically serve defense counsel Corey Beck, and serve by mail registered agent Chan at two different addresses than the one Sapper had accepted service at a few days earlier.[39] The magistrate judge found that "[b]ecause Plaintiff has been unsuccessful in serving Defendant under Fed. R. Civ. P. 4(e)(1), Plaintiff seeks to serve Defendant under the Nevada Law . . . The Court finds such service appropriate."[40] Auto Mart is correct that Mitchell did not effectuate service in compliance with this order. But it's clear that the magistrate judge based her order on the misconception that Auto Mart had not yet been served. Because there is prima facie evidence that Auto Mart was indeed served on May 25, 2021, I deny Auto Mart relief based on this argument.

### 2. *Auto Mart has not shown good cause to set aside default.*

Auto Mart addresses only one *Falk* factor to argue that there is good cause to set aside the clerk's entry of default:[41] it maintains a meritorious defense to Mitchell's claims because the "repossession and sale of [the] vehicle was justified under [the] agreement and facts of [the]

---

[37] ECF No. 12; ECF No. 13; *see* ECF No. 14.
[38] ECF No. 14; ECF No. 15.
[39] ECF No. 16 at 3.
[40] *Id*. at 3 (cleaned up).
[41] ECF No. 44 at 3.

case."[42] It relies on Sapper's declaration, which states that Mitchell was in default under the agreement because her first payment was late, she moved out of state without providing notice of her new address or employment, and the prospect of future payment was thus impaired.[43]

I rejected some of these theories in my order granting Mitchell's motion for summary judgment against Right-Now Recovery.[44] Even if Mitchell's first payment was late, she would not be in default under the agreement until January 22, 2020—two weeks after her car was repossessed.[45] And although the sales contract prohibited Mitchell from taking the car out of state without Auto Mart's written permission, the contract doesn't indicate that doing so triggers a default.[46]

The contract does suggest, however, that default may occur if "the prospect of payment, performance or realization of collateral is significantly impaired (the burden of establishing [this] is on the Seller)."[47] Sapper states in his declaration that Mitchell quit her job and would not provide Auto Mart with her new employment information, but this fact alone does not suggest that Mitchell was incapable of making her payments under the contract. It merely suggests that Auto Mart was not privy to her current source of income, not that her income was absent altogether or that she lacked another source of funds. Auto Mart has not provided facts that show that Mitchell was in default under the agreement, nor has it offered any other possible

---

[42] *Id.*

[43] *Id.* at 18–19.

[44] *See* ECF No. 29 at 6–7.

[45] *Id.*; *see also* ECF No. 22-5 at 26 (the sales contract states that default would occur if Mitchell "fail[ed] to make a payment later than 30 days past the date required by the agreement," at which point Auto Mart could "at [its] option and without notice or demand . . . take immediate possession of the vehicle.").

[46] ECF No. 29 at 7; *see also* ECF No. 22-5 at 2, 11.

[47] ECF No. 22-5 at 26.

8

defenses to Mitchell's claims. Because it carries the burden of showing good cause to set aside the default and has failed to establish a meritorious defense—the only *Falk* factor it addressed—I deny its motion for that relief.

**B.    The *Eitel* factors weigh in favor of granting default judgment.**

FRCP 55(b)(2) permits a plaintiff to obtain a default judgment after the clerk enters default based on a defendant's failure to defend. After default, the complaint's factual allegations are taken as true, except those relating to damages.[48] "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default."[49] The court has the power to require a plaintiff to provide additional proof of facts or damages to ensure that the requested relief is appropriate.[50] A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.[51] Whether to grant a motion for default judgment lies within the trial court's discretion,[52] which is guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[53]

---

[48] *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); Fed R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[49] *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

[50] *See* Fed R. Civ. P. 55(b)(2).

[51] *See id.* at 55(c).

[52] *Eitel*, 782 F.2d at 1471.

[53] *Id.* at 1471–72.

### 1. *The first, fifth, sixth, and seventh Eitel factors balance in favor of judgment.*

The first, fifth, sixth, and seventh factors consider whether Mitchell will suffer prejudice if a default is not entered, whether disputes regarding material facts could arise, whether Auto Mart's default may have resulted from excusable neglect, and the strong policy in favor of deciding cases on their merits. The first *Eitel* factor weighs in favor of default judgment. Auto Mart was properly served in May 2021 but didn't appear until September 2023 with a sparse motion and response. Auto Mart's failure to adequately participate in this litigation compounds Mitchell's injuries by requiring her to expend additional resources litigating uncontested issues, like whether she was in default for nonpayment on January 9, 2020, when the agreement clearly states she would not be in default until January 22nd. Without a judgment against Auto Mart, Mitchell has no other avenue for recourse.

The fifth and sixth *Eitel* factors also weigh in favor of default judgment. All non-damages-related material facts in the complaint have been admitted as a matter of law by virtue of Auto Mart's default, and because Auto Mart knew of this litigation since May 2021 and failed to respond for more than two years, default is not due to excusable neglect. Although the seventh *Eitel* factor generally weighs against default judgment because cases "should be decided on their merits whenever reasonably possible,"[54] courts have recognized that when defendants fail to answer the complaint, a decision on the merits is "impractical, if not impossible."[55] So the seventh factor is outweighed by the other factors here.

---

[54] *Id.* at 1472.

[55] *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

### 2. *The second and third Eitel factors weigh in favor of default judgment.*

The second and third *Eitel* factors require Mitchell to demonstrate that she may recover under her stated claims. "Of all the Eitel factors, courts often consider the second and third factors to be the most important."[56] Mitchell pled claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and negligence, plus two statutory claims for deceptive trade practices and violations of Nevada's UCC statutes. After accepting as true all of the facts alleged in her complaint, I find that Mitchell can only recover under her non-statutory claims.

A breach-of-contract claim in Nevada requires the (1) formation of a valid contract, (2) performance or excuse of performance by the plaintiff, (3) material breach by the defendant, and (4) damages as a result of the breach.[57] Additionally, "[a]n implied covenant of good faith and fair dealing is recognized in every contract under Nevada law,"[58] and "[w]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith."[59] Mitchell alleges that she entered into a valid contract with Auto Mart and Auto Mart breached the terms when it repossessed her car two weeks before the contract permitted.[60] She also claims that, by repossessing her car when she was not in default, Auto Mart breached the implied covenant of good faith and fair dealing. Accepting as true the

---

[56] *Vietnam Reform Party v. Viet Tan–Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019).

[57] *See Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) (quoting *Malone v. Univ. of Kansas Med. Ctr.*, 552 P.2d 885, 888 (Kan. 1976)).

[58] *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993).

[59] *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991).

[60] ECF No. 1 at 7–8.

11

factual allegations on which these claims are based, as I must in deciding this motion for default judgment, Mitchell pleads and proves her claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

She also brings a claim for conversion. Under Nevada law, "[c]onversion is a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of [those] rights."[61] "[C]onversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge."[62] Mitchell has established a conversion claim based on Auto Mart's premature repossession of her car, with her personal property still inside, before she was in default under the agreement.[63]

Mitchell's last common-law claim is for negligence. To plead a negligence claim in Nevada, she must establish (1) an existing duty of care, (2) breach of that duty, (3) legal causation, and (4) damages.[64] Mitchell alleges that Auto Mart owed her a duty and breached that duty by wrongfully repossessing her car.[65] She claims that "as a proximate result of [its] negligence, [she] has suffered significant emotional distress, mental anguish, and additional financial harm."[66] Accepting Mitchell's factual allegations as true, she has sufficiently established a claim for negligence.

---

[61] *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1289, 1287 (Nev. 2006).

[62] *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000).

[63] *See* ECF No. 1 at 14–15.

[64] *Turner v. Mandalay Sports Ent., LLC*, 180 P.3d 1172, 1175 (Nev. 2008).

[65] ECF No. 1 at 15.

[66] *Id*. at 16.

But Mitchell's deceptive-trade-practices and UCC secured-transaction claims do not offer the same substantive merit. Mitchell alleges that Auto Mart engaged in deceptive-trade practices in violation of Nevada Revised Statutes (NRS) §§ 598.0915, 598.092, and 598.0923 when it repossessed her car before she defaulted under the agreement.[67] This fact is the only information she provides to plead these claims and, although I must accept it as true, this fact alone is not strong enough to establish a deceptive-trade-practices claim under any of these three distinct provisions.

NRS § 598.0915 defines deceptive-trade practices as false representation of goods for sale. Although Mitchell claims that Auto Mart violated this statute when it wrongfully repossessed her car, she does not describe any specific representations Auto Mart made about the source, characteristics, quality, style, advertisement, price, or transaction of the car. Without more information about Auto Mart's specific representations, she has not established a claim under NRS § 598.0915.

NRS §§ 598.092(4) and (8) characterize a deceptive-trade practice as failing to deliver or refund goods within a reasonable time and "[k]nowingly misrepresenting the legal rights, obligations, or remedies of a party to a transaction." Mitchell again relies only on the allegation that Auto Mart violated these provisions "when it, among other things, wrongfully repossessed the car when [Mitchell] was not in default."[68] Her complaint lacks detail about Auto Mart's untimely delivery of the car or any information about a refund. It also does not contain facts that show Auto Mart knew it was repossessing her car prematurely. So Mitchell's deceptive-trade-practices claim under NRS § 598.092 also fails.

---

[67] *Id*. at 8–10.

[68] *Id*. at 9–10.

In her last attempt to state a claim under this statute, Mitchell alleges that Auto Mart violated NRS §§ 598.0923(b) and (c), which characterize deceptive-trade practices as knowingly failing "to disclose a material fact in connection with the sale or lease of goods" and knowingly violating "a state or federal statute relating to the sale or lease of goods."[69] She repeats that Auto Mart violated these provisions when it wrongfully repossessed her car, but she does not allege facts that show Auto Mart knowingly hid a material fact or that it knowingly violated the law. So I can't find that Mithcell has established a deceptive-trade-practices claim under NRS § 598.0923 either.

Mitchell's UCC claim suffers from defects as well. Nevada's version of the Uniform Commercial Code is codified in NRS Chapter 104. Mitchell alleges that Auto Mart violated NRS § 104.9609, which entitles a secured party to a self-help repossession after a default occurs, provided it does so in a reasonable manner without breaching the peace; NRS 104.9610(2), requiring that a disposition after a default be commercially reasonable; NRS 104.9611(2), requiring a secured party to send the debtor a notification of disposition if the secured party disposes of the collateral under NRS 104.9610; and NRS 104.9616, requiring a secured party to send an explanation to the debtor calculating the surplus or deficiency after a disposition under NRS 104.9610.[70] But these provisions fall within part six of Chapter 104, which provides a comprehensive scheme for the rights and duties of parties, disposition of collateral, and notification requirements *after a party defaults* on a secured transaction.[71] Mitchell's entire case

---

[69] *Id*. at 10 (quoting Nev. Rev. Stat. §§ 598.0923(b) and (c)).

[70] ECF No. 1 at 11–14.

[71] *See generally* Nev. Rev. Stat. Chapter 104.

14

theory relies on facts that show she was not in default under the agreement. So she cannot now seek relief under a statute designed to govern the very incident she claims never occurred.

In sum, Mitchell has shown that some, but not all, of her claims have merit and that her complaint is sufficient to warrant recovery. But complete recovery under all theories of injury is not required for entry of default judgment. So I find that the second and third *Eitel* factors nevertheless weigh in favor of granting her motion for a default judgment against Auto Mart.

### 3. *The fourth Eitel factor also justifies relief.*

Mitchell requests $14,715.47 in actual and statutory damages, $4,085.75 in attorneys' fees and costs, and a declaratory ruling that she is not responsible to Auto Mart for any deficiency balance.[72] *Eitel*'s sum-of-money factor requires the court to consider the amount of money at stake in relation to the seriousness of Auto Mart's conduct.[73] Default judgment is disfavored if the sum of money at stake is "completely disproportionate or inappropriate."[74] Because I find that Mitchell can only recover under her non-statutory claims, she is not entitled to statutory damages under NRS 41.600 for deceptive trade practices, $12,215.47 under NRS 104.9625(3)(b) for violations of Nevada's UCC statutes that apply after default, or $500 under NRS 104.9625(5) for failure to provide an explanation of calculation of surplus or deficiency required under NRS 104.9616.[75] While I decline to award her statutory damages, I do find that $2,000 in actual damages—the cost of her down payment on the car—is proportional to her

---

[72] ECF No. 36.

[73] *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006) (quoting *PepsiCo.*, 238 F. Supp. 2d at 1176).

[74] *Id.*

[75] ECF No. 36 at 9; ECF No. 1 at 10, 14.

injury.[76]  This factor thus also weighs in favor of default judgment.  And because the vast majority of *Eitel* factors favor entering default judgment against Auto Mart, I grant Mitchell's motion.

**C.     Mitchell is entitled to attorneys' fees and costs.**

Mitchell argues that she should be awarded $3,495.75 in attorneys' fees and $590 in costs under NRS § 18.010.  NRS § 18.010(2)(a) permits a court to award attorneys' fees to a prevailing party who has not recovered more than $20,000.  Mitchell has established $2,000 in actual damages, far below the $20,000 threshold, so I find that she has identified a proper statutory basis for an award of fees.

The lodestar method is the required starting point when determining reasonable fee awards and requires "multiplying the number of hours [that] the prevailing party reasonably expended on the litigation by a reasonable hourly rate."[77]  Requests for attorneys' fees must also meet the requirements of Local Rule 54-14, which requires the movant to include an attorney affidavit, "[a] reasonable itemization and description of the work performed[,]" and other information about the case and the attorneys' work on it.[78]  After calculating a lodestar figure, the court may review the reasonableness of the award under the factors adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, including the "time and labor required" and the "experience, reputation, and ability of the attorneys."[79]

---

[76] ECF No. 36 at 11; *see also* ECF No. 36-1 at 2–3.

[77] *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citing *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)).

[78] L.R. 54-14(a)–(b).

[79] *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

I have reviewed Mitchell's motion,[80] the sworn attorney declarations from her attorneys Michael King and Gerardo Avalos,[81] both of their attorney-billing records for this matter,[82] their hourly rates under the *Kerr* factors, and Local Rule 54-14. I find that the rates charged and amount of work performed, compared to the market standard in similar consumer-rights cases, establish the reasonableness of the lodestar calculation. I also find that the request for fees is properly supported by the evidence. In particular, the attorneys' declarations and firm's billing records show that the attorneys worked on the case for a conservative, combined 9.8 hours[83] at hourly rates of $250 and $475,[84] and the firm and attorneys have significant experience in this type of litigation.[85] Mitchell's request for process-server costs is also adequately supported by the evidence.[86] So because the fees and costs requested are reasonable, I award Mitchell $3,495.75 in attorneys' fees and $590 in costs.

**D.     Declaratory relief is appropriate to clarify the parties' rights under the contract.**

"The purpose of the Declaratory Judgment Act[87] is to afford an added remedy to one who is uncertain of [her] rights and who desires an early adjudication thereof without having to wait until [her] adversary should decide to bring suit, and to act at [her] peril in the interim."[88] A

---

[80] ECF No. 36 at 13–20.

[81] ECF No. 36-7; ECF No. 36-8.

[82] ECF No. 36-5; ECF No. 36-6.

[83] ECF No. 36 at 14.

[84] ECF No. 36-7 at ¶¶ 38-57; ECF No. 36-8 at ¶¶ 13-22.

[85] *See* ECF No. 36-7; ECF No. 36-8.

[86] ECF No. 36-4.

[87] 28 U.S.C. § 2201.

[88] *Shell Oil Co. v. Frusetta*, 290 F.2d 689, 692 (9th Cir. 1961) (citation omitted).

17

grant or denial of declaratory relief is within the court's discretion.[89]  Mitchell seeks a declaration that she is not responsible for any deficiency balance that may have resulted from Auto Mart's disposition of her car, and she requests that I declare the contract void and unenforceable against her.[90]  I already found that Mitchell established a breach-of-contract claim sufficient to conclude that Auto Mart materially breached their agreement when it repossessed her car before she was in default.  To foreclose any future uncertainty that may arise under the agreement and avoid the risk of Auto Mart attempting to enforce the contract in future litigation, I exercise my discretion and declare that the contract is now void and unenforceable, and Mitchell is not liable to Auto Mart for any deficiency balance under it.

## Conclusion

IT IS THEREFORE ORDERED that Auto Mart's motion to set aside the default **[ECF No. 44] is DENIED,** and Mitchell's motion for default judgment **[ECF No. 36] is GRANTED**. The Clerk of Court is directed to **ENTER FINAL JUDGMENT** in favor of Whitney Mitchell and against Auto Mart, LLC in the total amount of $6,085.75 (which consists of $2,000 in actual damages, $3,495.75 in attorneys' fees, and $590 in costs), declare that Mitchell is not liable for any deficiency balance under the agreement and the contract is now void and unenforceable, and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
January 3, 2024

---

[89] *U.S. v. Washington*, 759 F.2d 1353, 1356 (9th Cir. 1985).

[90] ECF No. 36 at 13.